**INTERNATIONAL DEALERS SCHOOL, INC., a Nevada corporation, Plaintiff,**

v.

**Richard W. RILEY, Secretary of the United States Department of Education, in his official capacity, Defendant.**

No. CV–S–93–451–LDG(RJJ).

United States District Court, D. Nevada.

June 2, 1993.

David O. Drake, Salt Lake City, UT, Thomas Rondeau, Goold, Patterson, DeVore & Rondeau, Las Vegas, NV, for plaintiff.

Monte N. Stewart, U.S. Atty., David S. Moynihan, Asst. U.S. Atty., Las Vegas, NV, Lawrence G. Brett, Atty., U.S. Dept. of Educ., Office of Gen. Counsel, Washington, DC, for defendant.

*ORDER*

GEORGE, Chief Judge.

This matter is before the court on Plaintiff's Ex Parte Motion to Exceed Page Limits (# 3) and Motion for Temporary Restraining Order and Preliminary Injunction (# 4). The Defendant timely Responded (# 9) and also filed a Motion to Exceed Page Limits (# 8). A hearing on this matter was held on May 27, 1993.

Plaintiff seeks an injunction forcing the Department of Education (DOE) to do the following: invalidate and suspend the cohort default rates for Plaintiff's school for 1989 and 1990; instruct the DOE to publish the fact of the invalidation and suspension to all entities that act as guaranty agencies, lenders, and servicers of guaranteed student loans; order that Plaintiff may substitute its own recalculated cohort default (CDR) rate for 1989 and 1990 during the pendency of this action; enjoin Defendant from violating 20 U.S.C. § 1085(m); and enjoin Defendant from further violating Plaintiff's due process rights.

Jurisdiction is available under the Administrative Procedures Act. *See Atlanta College of Medical and Dental Careers v. Riley,* 792 F.Supp. 114 (D.C.Cir.1992). Defendant argues that section 1082(a)(2) bars any injunctive relief against it. This section states, in pertinent part, that "no ... injunction ... or other similar process, mesne or final, shall be issued against the Secretary...." 20 U.S.C. § 1082(a)(2).

■ In the *Wilfred Academy* case, which was heard along with *Atlanta College* in a consolidated appeal, the district court rejected the department's argument that this section completely barred injunctive relief. The court agrees with the reasoning of that case. The injunction does not interfere with the internal operation of the Department, but merely temporarily suspends a default rate pending recalculation. Also, if the Department is still violating its statutory mandate to exclude improperly serviced or collected loans, it would be acting outside its authority, thus allowing for extraordinary relief. *See Oklahoma Aeronautics, Inc. v. United States,* 661 F.2d 976, 977 (D.C.Cir.1981), *aff'd*

**750**

*in part, rev'd in part on other grounds,* 943 F.2d 1344 (D.C.Cir.1991).

■ In the Ninth Circuit, to obtain a preliminary injunction a "party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury *or* (2) that serious questions are raised and the balance of hardships tips in its favor." *United States v. Nutri–Cology,* 982 F.2d 394, 397 (9th Cir.1992), (quoting *United States v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 174 (9th Cir.1987) (emphasis added)).

■ Plaintiff argues that it can show an overwhelming likelihood of success on the merits based on decisions in other courts and also that the school will suffer irreparable injury if the injunction is not granted. Plaintiff further argues that serious questions are raised and the balance of hardships tips in its favor.

In the *Atlanta College* district court case, the court found that once a plaintiff became an ineligible institution under 20 U.S.C. § 1085, it would be restricted to following the appeals process outlined in that section. *Atlanta College,* 792 F.Supp. at 121. The court arrived at this finding after determining that Congress clearly intended to exempt ineligibility determinations based on excessive cohort default rates from the pre-termination hearing requirements set forth in section 1094. Thus, the court held that the appeal process provided for in section 1085 was the process to be followed.

On appeal to the D.C. Circuit, the Secretary of Education argued that the Department's practice of denying review of servicing errors or deferring review to the servicing agency was not a violation of section 1085. The appellate court affirmed the *Atlanta College* district court's finding that the Secretary's practice of allowing the servicing agencies to review claims of servicing error was improper and a violation of his statutory duty under § 1085(m) to "exclude any loans which, due to improper servicing or collection, would result in an inaccurate or incomplete calculation of the cohort default rate." *Atlanta College of Medical and Dental Ca-*

*reers v. Riley,* 987 F.2d 821, 828 (D.C.Cir. 1993) (quoting 20 U.S.C. § 1085(m)(1)(B)).

However, the *Atlanta College* court also noted that its decision only required the Secretary to allow schools to argue in their administrative appeal that the CDR calculation is inaccurate because the Secretary had failed to comply with his statutory duty under section 1085(m). Although the court limited its holding to this grant, it did find that the Secretary may not administer the appeals process in a way that requires the schools to proffer information that they cannot obtain in order to maintain a successful appeal. *Id.* at 829 n. 13.

The facts of this case are not completely analogous to those in *Atlanta College.* Plaintiff has not been terminated from eligibility and Plaintiff has not sought administrative relief from the Department through the administrative appeal process. However, it appears that the process for a school to challenge its CDR based on servicing or collection errors before actual termination was not well-settled or defined until it was set forth in the "Dear Colleague" letter sent out by the Department in May of 1993. Also, Plaintiff alleges that this appeals process is deficient in that it requires the school to be "clairvoyant" in determining the cause of the error.

The court is not convinced from the information before it that Plaintiff can show a likelihood of success on the merits or irreparable injury. However, if, as Plaintiff alleges, the Department is relying on erroneous coded information from the guaranty and/or servicing institutions without instituting sufficient independent controls or supervision, Plaintiff has raised serious questions surrounding the application and fairness of the appeals process at issue.

As to the balance of harms, the information provided by Plaintiff indicates that the school provides a valuable service to those who enroll therein and that many underprivileged individuals, especially single mothers, benefit from the school's programs. Plaintiff also indicates that the publication of the CDR's has effected a de-facto closing of the school. Although the court does not necessarily agree that the loan difficulties which

the school faces amount to the de facto closing of the school, it is clear that the publication of the CDR's in question has severely hampered the ability of students wishing to attend IDS to secure federal loan monies.

Therefore, the court finds that the balance of the harms in this matter is in favor of the Plaintiff and the court is willing to grant a preliminary injunction for a period of sixty (60) days. During that sixty-day period, Plaintiff will conduct discovery and set forth its case before this court in an effort to prove that the 1989 and 1990 CDR's have been improperly calculated due to servicing and collection errors which the Department improperly did not exclude. Because the court recognizes that Defendants will suffer damage if the CDR is not proved to be below 30%, the court will require Plaintiff to post a bond of $20,000 within ten (10) days of the date of entry of this Order.

Accordingly, good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (# 4) is granted.

IT IS FURTHER ORDERED that Plaintiff's Ex Parte Motion to Exceed Page Limits (# 3) is granted.

IT IS FURTHER ORDERED that Defendant's Motion to Exceed Page Limits (# 8) is granted.

IT IS FURTHER ORDERED that Defendant, his successor, attorneys, agents, officers, servants or employees are directed to suspend publication of the 1989 and 1990 Cohort Default Rates for Plaintiff IDS.

IT IS FURTHER ORDERED that Defendant, his successor, attorneys, agents, officers, servants or employees are directed to officially publish and/or otherwise notify all participating lenders and guarantee agencies of the suspension of Plaintiff's 1989 and 1990 Cohort Default Rates.

IT IS FURTHER ORDERED that Plaintiff shall post a $20,000 bond within ten (10) days of the date of entry of this Order, the proceeds of which shall be used to repay any loans which originate during the suspension period of the Cohort Default Rates and which subsequently default.

IT IS FURTHER ORDERED that the parties will appear before the court on August 2, 1993, at 8:00 a.m. in Courtroom # 3 for final disposition of this matter.